UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

───────────────────────

No. 24-3164

───────────────────────

UNITED STATES OF AMERICA,                       Appellee,

v.

ANNA LICHNOWSKI,                               Appellant.

## APPELLEE'S OPPOSITION TO APPELLANT'S MOTION FOR BOND PENDING APPEAL

Appellee, the United States of America, respectfully opposes appellant Anna Lichnowski's motion for bond pending appeal. Lichnowski participated in the Capitol riot on January 6, 2021, and was convicted after a bench trial on all four counts against her: (1) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One); (2) disorderly and disruptive conduct in a restricted building or grounds, in violation of § 1752(a)(2) (Count Two); (3) disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and (4) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G)

(Count Four). See *United States v. Lichnowski*, No. 23-cr-341, ECF 75. Lichnowski was sentenced to 45 days of incarceration on Count One, and concurrent terms of three years' probation on Count Two and one year of probation on Counts Three and Four (*id.*).

This Court should deny Lichnowski's motion for release because she has not met her burden to show that her anticipated claims on appeal "raise[ ] a substantial question of law or fact likely to result in" reversal or a new trial on Count One (the count for which she received a prison term), a sentence that does not include a term of imprisonment, or a sentence reduced to less than her time served plus the expected duration of the appeal process. *See* 18 U.S.C. § 3143(b)(1).

## BACKGROUND

### *Overview of Lichnowski's Conduct on January 6*

Prior to January 6, Lichnowski planned to go to Washington, D.C., on January 5 and 6 to "be there for the votes" (Tr. 7/9:107).[1] She knew

---

[1] "Tr." refers to the transcripts of the bench trial held on July 8, 9, and 10, 2024, which are located on the district court's docket at ECF numbers 59, 60, and 61, respectively. The transcript citations herein refer to the date of the district court proceeding and the transcript page number, i.e., "Tr. [date]:[page number]."

that Congress would be meeting on January 6 to certify the election and expressed on Facebook her "hope" that President Trump would invoke the Insurrection Act to overturn the election results (*id.* at 107, 163).

On January 5, Lichnowski drove from her home in New Jersey to Washington, D.C. (Tr. 7/9:154). The next morning, she attended the "Stop the Steal" rally at the Ellipse before going to the Capitol (*id.* at 157-58). On January 6, the Capitol building and a portion of the surrounding grounds were closed to the public, as indicated by posted signs and a restricted perimeter comprised of permanent barricades, bike racks, and snow fencing (Tr. 7/8:22-25).

Lichnowski approached the Capitol from the west and made her way to the Capitol's Upper West Terrace, where she encountered a line of police officers in riot gear—including helmets and gas masks (Tr. 7/10:40). At 2:53 p.m., she entered the Capitol through the Senate Wing Door, which is an emergency door not ordinarily used for ingress or egress (Tr. 7/8:68-69; Tr. 7/9:83-84). When Lichnowski entered the Capitol, she heard a blaring alarm, saw that the door was broken, and witnessed people climbing in and out of broken windows (Tr. 7/9:166; Tr. 7/10:6, 42). People were chanting "very loudly" and Lichnowski joined in the chants

3

(Tr. 7/10:6, 47-48). She remained in the area around the Senate Wing Door for seven minutes (Tr. 7/9:85). At one point, she was mere feet away from a line of Capitol Police officers in riot gear guarding the north end of the hallway (Tr. 7/8:87; Tr. 7/10:10).

From the Senate Wing Door, Lichnowski walked further into the Capitol, to the Crypt, where she remained for nearly 30 minutes (Tr. 7/9:88). At 3:22 p.m., a Capitol Police officer approached Lichnowski and instructed her to leave (Tr. 7/9:49-50, 54-55). Lichnowski did not comply, and, instead, moved to another area where she leaned against a column for several minutes (Tr. 7/9:56-57, 86-88; Government Exhibit (Gov. Ex.) 106A.2 at 3:22 to 3:32 p.m.).[2] She left ten minutes later only after police officers took control of the Crypt (Tr. 7/9:87-88; Gov. Ex. 106A.2 at 3:32 p.m.).

### *Lichnowski's Testimony at Trial*

Lichnowski testified at trial. Although she heard an alarm inside the Capitol and saw the broken windows and door, she did not view those facts as indicia that the Capitol building was restricted (Tr. 7/9:166; Tr.

---

[2] The exhibit cited herein is a video, which is being submitted to the Court using the Court's secure Box.com file repository.

7/10:6, 42). She testified that the alarm could have been caused by a fire inside the Capitol—and not presence of unauthorized individuals (Tr. 7/10:6). Lichnowski denied that she delayed leaving the Crypt after a police officer told her to leave (*id.* at 17, 21). On cross examination, however, Lichnowski admitted she was instructed to leave ten minutes before she ultimately exited the Crypt (*id.* at 52-56).

As to the whereabouts of then-Vice President Pence, Lichnowski testified that she did not know that Pence was at the Capitol at the time that she entered (Tr. 7/10:22). However, Lichnowski acknowledged that she knew the vote certification was taking place at the Capitol and that Pence would be present for the certification (*id.* at 25). She also claimed that, while she was approaching the Capitol, a friend had called to inform her the Capitol had been evacuated (Tr. 7/9:160-62). On cross-examination, the government showed that the call records were reported in UTC time, not Eastern Standard Time, and the call therefore did not occur on the afternoon of January 6 as she claimed (Tr. 7/10:33-34).

### *District Court's Findings*

The district court found Lichnowski guilty on all four counts against her (Tr. 7/10:122). As to Count One, the court declined to find that

5

Lichnowski knowingly entered or remained on the restricted Capitol grounds because "we don't know exactly how she made her way to the Capitol, and, therefore, can't say . . . she would have been put on notice that she wasn't permitted to be on the grounds" (*id.* at 116). However, the court found that Lichnowski knowingly entered and remained in the restricted Capitol building without lawful authority (*id.* at 120-21). The court reasoned that Lichnowski heard alarms, saw that the door and windows were broken, and went into the Capitol with "an unruly mob of people" (*id.*). The court also found that Lichnowski's self-serving testimony was untruthful and "sought to deceive the Court . . . which [was] not sufficient in accomplishing that objective" (*id.* at 122).

### *Lichnowski's Motion for Release Pending Appeal*

After she was sentenced, Lichnowski moved for release pending appeal (ECF 78). Lichnowski argued she was not a flight risk or a danger to the community, and that her appeal would raise substantial questions as to the validity of her conviction under 18 U.S.C. § 1752(a)(1) (*id.*). Specifically, Lichnowski argued that her appeal would raise substantial questions as to whether the Capitol was restricted on January 6, and whether she was required to know that Pence was or would be visiting

the Capitol that day (*id.* at 4-5). The government opposed (ECF 79). The district court denied Lichnowski's motion (ECF 82). Given the evidence at trial, and this Court's recent decision in *United States v. Griffin*, 119 F.4th 1001 (D.C. Cir. 2024), the district court concluded that Lichnowski failed to show that her anticipated appellate claims would raise a substantial question entitling her to relief (*id.* at 5-6).

## ARGUMENT

This Court should deny Lichnowski's request for bond pending appeal. "[A] person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" "shall . . . be detained, unless [the Court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released"[3] and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a

---

[3] The United States does not dispute that Lichnowski is not likely to flee and that her release would not endanger the community.

term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1). A "substantial question" is "a close question or one that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 555-56 (D.C. Cir. 1987). The "close question" standard is "more demanding" than one that requires the inquiry to be "fairly debatable," "fairy doubtful," or simply "not frivolous." *Id.* at 555. The defendant bears the burden to make the required showing under § 3143(b)(1). *Id.* at 555-56 (referring to "the required showing on the part of the defendant").

Lichnowski argues (at 2) that substantial questions concerning the sufficiency of evidence will likely result in a reversal or a new trial of her conviction under 18 U.S.C. § 1752(a)(1) (the count for which she was sentenced to a term of imprisonment). "The standard for overturning a guilty verdict on the grounds of insufficiency of evidence is, of course, a demanding one." *United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991). In reviewing the sufficiency of the evidence, this Court will "defer to the factfinder's verdict, considering the evidence 'in the light most favorable to the government.'" *Griffin*, 119 F.4th at 1009 (quoting, inter alia, *United States v. Robertson*, 103 F.4th 1, 10-11 (D.C. Cir. 2023)).

8

This Court "will affirm a guilty verdict if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Lichnowski is not entitled to release pending appeal especially given the demanding standard to show evidentiary insufficiency.

*First*, Lichnowski claims (at 2-3) that the evidence was insufficient to show that the Capitol building was "posted, cordoned off, or otherwise restricted," as required by 18 U.S.C. § 1752(a)(1). Section 1752(a)(1) prohibits "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so." As relevant here, "restricted buildings or grounds" means "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." § 1752(c)(1)(B).

At a minimum, the Capitol building was "otherwise restricted" on January 6. In addressing a nearly identical question, this Court recently held that "'[o]therwise' means 'in another way' or 'in a different manner,' and 'restricted' means deemed 'accessible only to certain authorized

people.'" *Griffin*, 119 F.4th at 1010 (quoting *Otherwise (adv.)*, Oxford English Dictionary (2d ed. 1989), and *Restricted (adj.)*, Oxford English Dictionary). "Section 1752 thus applies to areas made nonpublic by posting signs, cordoning off the area, or in some other way effecting the restriction, regardless of whether the method consistently and physically stakes out the area's boundaries." *Id.*

The evidence at trial was sufficient for a reasonable factfinder to find that the Capitol building on January 6 was "otherwise restricted" when Lichnowski entered and remained there. The building was closed to the public, guarded by the police, and surrounded by a physical security perimeter consisting of bike racks, snow fencing, and signs that the area was closed (Tr. 7/8:22-25). While Lichnowski was inside the building, alarms were sounding and a Capitol Police officer instructed Lichnowski to leave—an instruction she ignored (Tr. 7/9:49-55, 166; Tr. 7/10:6, 42); *see Griffin*, 119 F.4th at 1010 (officials may "otherwise restrict[ ]" an area by verbally communicating that the area is closed). Although other rioters had removed many of the physical restrictions on the Capitol grounds and breached the Capitol before Lichnowski entered the building, such unauthorized actions do not "alter the status of the

10

area as closed to the public." *Id.* Indeed, while Lichnowski was inside the Capitol, police officers continued battling to secure the building and instructed her to leave, but Lichnowski remained inside. *Id.* (listing evidence that the Capitol grounds remained restricted even after the perimeter was overrun, including that police officers "remained onsite battling to secure [the grounds]"). Based upon this evidence, the district court reasonably concluded that Lichnowski "clearly, when she entered, knew or had reason to know that her presence was not welcome" because "the building had been evacuated," she "hear[d] the alarm before she entered," saw "the door was broken before she entered," saw "a window that was broken before she entered," and saw "people enter the Capitol through that door" (Tr. 7/10:120-21).

Lichnowski offers alternative explanations for some of the indicia that the Capitol building was restricted. She argues (at 3) that the alarms could have been sounding "for innocent reasons," and that the broken windows and heavy police presence did not necessarily indicate that the Capitol was restricted. The evidence "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," however. *Lam Kwong-Wah*, 924 F.2d at 302.

Because it was not irrational for a factfinder to conclude that the Capitol was restricted on January 6 when she entered and remained there, Lichnowski cannot demonstrate that she is likely to prevail on appeal.[4]

*Second*, Lichnowski claims (at 3-4) the government was required to show that she knew that a person protected by the Secret Service—here, then-Vice President Pence—was or would be visiting the Capitol. *See* § 1752(c)(1). However, this Court squarely rejected that argument in *Griffin*, where this Court held that "breaching the restricted area suffices even without knowing the basis of the restriction—here, the presence of Vice President Pence at the Capitol on January 6." *Griffin*, 119 F.4th at 1003. Lichnowski acknowledges (at 3-4) that *Griffin* forecloses her claim and argues only that the panel in *Griffin* was not unanimous. But she fails to explain how a claim that is foreclosed by binding precedent presents a substantial question of law likely to result in reversal. Even if a petition for rehearing or petition for certiorari is eventually filed in

---

[4] Lichnowski does not separately claim that she lacked knowledge that the Capitol building was restricted. Rather, she argues that the building was not restricted within the meaning of § 1752. In any event, much of the same evidence showing that the building was restricted establishes that Lichnowski knew the building was restricted when she entered and remained there.

*Griffin*, there is no guarantee that such a petition would be granted. Lichnowski cites no authority holding that this speculative possibility is enough to establish a "close question," which requires more than simply showing that the inquiry is "fairly debatable," "fairy doubtful," or simply "not frivolous." *Perholtz*, 836 F.3d at 555.

In any event, Lichnowski testified at trial that she knew Vice President Pence would be at the Capitol for the certification (Tr. 7/10:25). And, even if credited, Lichnowski's testimony established only that she thought Pence was not present at the time she entered the Capitol; she did not deny that she was aware that Pence would be visiting the Capitol to complete the certification. § 1752(c)(1)(B) ("the term 'restricted buildings or grounds' means any posted, cordoned off, or otherwise restricted area of a building or grounds where . . . [a] person protected by the Secret Service is or *will be* temporarily visiting" (emphasis added)). Given the record here, the district court reasonably concluded that "in fact, the government did present evidence from which factually it can be concluded beyond a reasonable doubt that she knew that the vice president either was going to be there or was actually there, based upon what she heard at the speech where the president clearly indicated that

the vice president was going to be at the Capitol presiding over the electoral college vote" (Tr. 7/10:120).

Because Lichnowski's appeal does not present a substantial question of law or fact likely to lead to reversal or a new trial on her conviction, the Court should deny her motion for release pending appeal pursuant to 18 U.S.C. § 3143(b).

## CONCLUSION

WHEREFORE, the government respectfully requests that this Court deny appellant's motion for bond pending appeal.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
JAKE STRUEBING
ERIC BOYLAN
Assistant United States Attorneys

_____/s/_____
MARY C. FLEMING
D.C. Bar # 1048019
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Mary.Fleming@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 27(d)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this opposition to appellant's motion for bond pending appeal contains 2768 words, and therefore complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This motion has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
MARY C. FLEMING
Assistant United States Attorney


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing motion to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Terrell N. Roberts, Esq., on this 6th day of January, 2025.

/s/
MARY C. FLEMING
Assistant United States Attorney